UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.L.,<br><br>    Plaintiff,<br><br>  v.<br><br>KILOLO KIJAKAZI,<br><br>    Defendant. | Case No. 21-cv-07654-SVK<br><br>**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br>Re: Dkt. Nos. 14, 17 |

  Plaintiff appeals from the final decision of the Commissioner of Social Security, which denied her applications for disability insurance benefits and supplemental security income. The Parties have consented to the jurisdiction of a magistrate judge. Dkt. 3, 9. For the reasons discussed below, the Court **DENIES** Plaintiff's motion for summary judgment (Dkt. 14) and **GRANTS** Defendant Commissioner's cross-motion for summary judgment (Dkt. 17).

**I. BACKGROUND**

  On or about August 23, 2018, Plaintiff filed applications for Title II disability insurance benefits and Title XVI supplemental security income. *See* Dkt. 11 (Administrative Record ("AR")) 288-306. On February 4, 2021, an Administrative Law Judge ("ALJ") denied Plaintiff's claims. AR 7-39 (the "ALJ Decision"). The ALJ concluded that Plaintiff has the following severe impairments: degenerative disc disease of the cervical and lumbar spine, peripheral neuropathy, depression, anxiety, and bipolar disorder. AR 13. The ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. AR 14-16. The ALJ found that through the date last insured, Plaintiff had the residual functional capacity ("RFC") to perform light work with certain limitations. AR 16-31. The ALJ determined that Plaintiff was unable to perform her past relevant work as a fast food manager, cashier/checker, or bank teller. AR 31. However, the ALJ found that there were other

jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as bagger-garments, packer, and clothing/garment sorter. AR 31-32. Accordingly, the ALJ found that Plaintiff was not under a disability, as defined in the Social Security Act, from June 4, 2016 (the amended alleged onset date) through the date of the ALJ Decision. Dkt. 32.

The Appeals Council subsequently denied review of the ALJ Decision. AR 1-6. Plaintiff timely filed an action in this District, seeking review of the ALJ Decision. Dkt. 1.

In accordance with Civil Local Rule 16-5, the parties filed cross-motions for summary judgment. Dkt. 14 (Plaintiff's motion for summary judgment); Dkt. 17 (Defendant's cross-motion for summary judgment). The cross-motions for summary judgment are now ready for decision without oral argument.

## II.    ISSUES FOR REVIEW

1. Did the ALJ properly evaluate the medical evidence?
2. Did the ALJ properly evaluate whether Plaintiff's impairments met or equaled a Listing?

## III.    STANDARD OF REVIEW

This Court is authorized to review the Commissioner's decision to deny disability benefits, but "a federal court's review of Social Security determinations is quite limited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015); *see also* 42 U.S.C. § 405(g). Federal courts "leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Brown-Hunter*, 806 F.3d at 492 (internal quotation marks and citation omitted).

The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based on the application of improper legal standards. *Id*. at 492. "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations," and this threshold is "not high." *Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks, citation, and alteration omitted); *see also Rounds v. Comm'r of Soc. Sec. Admin*., 807 F.3d 996, 1002 (9th Cir. 2015) ("Substantial evidence" means more than a mere scintilla but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion") (internal quotation marks and citations omitted).  The Court "must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Rounds*, 807 F.3d at 1002 (internal quotation marks and citation omitted).  Where the evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's findings if supported by inferences reasonably drawn from the record.  *Id*.

Even if the ALJ commits legal error, the ALJ's decision will be upheld if the error is harmless.  *Brown-Hunter*, 806 F.3d at 492.  But "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless" and is instead "constrained to review the reasons the ALJ asserts." *Id*. (internal quotation marks and citation omitted).

## IV. DISCUSSION

### A. Issue One:  Evaluation of the medical evidence

Plaintiff argues that the ALJ erroneously evaluated the medical evidence in concluding that Plaintiff had the RFC to perform light work with additional limitations.  Dkt. 14 at 3-12.

As stated above, Plaintiff's application for Social Security disability benefits was filed on or about August 23, 2018.  Under the Social Security Administration regulations that apply in this case,[1] the ALJ was required to consider all medical opinions and "evaluate their persuasiveness" based on the following factors:  (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors." 20 C.F.R. §404.1520c(a)-(c).[2]  The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," and the ALJ is required to explicitly address supportability and consistency in his decision.  Revisions to Rules, 82 Fed. Reg. 5844-01 at 5853; 20 C.F.R. § 404.1520c(b)(2); *see*

---

[1] New regulations went into effect on March 27, 2017, which include a change in how medical evidence must be evaluated. *See V.W. v. Comm'r of Soc. Sec.*, No. 18-cv-07297-JCS, 2020 WL 1505716, at *13 (N.D. Cal. Mar. 30, 2020) (quoting 20 C.F.R. § 416.920c(a)); see also 20 C.F.R. § 404.1520c(a).  This case is subject to these new regulations.

[2] The regulations at 20 C.F.R. § 404.1520c apply to Disability Insurance Benefits applications.  Parallel regulations concerning Social Security Income benefits are located at 20 C.F.R. § 416.920c.

3

*also Woods v. Kijakazi,* 32 F.4th 785, 791-793 (9th Cir. 2022). The ALJ may, but is not required to, explain how he considered the remaining three factors. 20 C.F.R. § 404.1520c(a)(2). The new regulations "displace [the Ninth Circuit's] longstanding case law" requiring an ALJ to articulate "specific and legitimate reasons" for rejecting a treating physician's opinion where the opinion is contradicted by other medical opinions. *Woods,* 32 F.4th at 787.

"Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant ... objective medical evidence.' " *Woods*, 32 F.4th at 791-92; *see also* 20 C.F.R. §§ 404.1520c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be"). "Consistency means the extent to which a medical opinion is 'consistent ... with the evidence from other medical sources and nonmedical sources in the claim.' " *Woods*, 32 F.4th at 792; *see also* 20 C.F.R. §§ 404.1520c(c)(2) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be").

As with all other determinations made by the ALJ, the ALJ's persuasiveness explanation must be supported by substantial evidence. *See Woods,* 32 F.4th at 792; *see also Azia B. v. Kijakazi*, No. 22-cv-01731-TSH, 2023 WL 1442841, at *7 (N.D. Cal. Feb. 1, 2023).

### 1. Kelvin Vu, M.D.

Plaintiff challenges the ALJ's evaluation of medical evidence offered by her treating physician, Dr. Vu. Dkt. 14 at 3-4, 8. Dr. Vu provided a medical source statement on December 9, 2020. AR 2158-2160. Among other opinions regarding Plaintiff's positional and manipulative limitations, Dr. Vu indicated that Plaintiff's impairments or treatments would cause her to be absent from work more than three times a month. AR 2160. He also opined that based on all of Plaintiff's physical and mental limitations, she would be precluded from performing a job, or be "off task," 15% of an 8-hour a day, 5 days per week job. *Id.* Dr. Vu stated that he based his opinions on "images/clinical exam." AR 2159-2160.

4

1    The ALJ stated that he found Dr. Vu's assessment to be "unpersuasive." AR 30. The ALJ
2    gave several reasons for discounting Dr. Vu's opinions. The ALJ noted that Dr. Vu said his
3    assessment was based on "imaging and examinations," but found that Dr. Vu's "own examination
4    findings of the claimant appear consistently unremarkable and imaging shows only mild to
5    moderate degenerative changes that do not support such extreme limitations." AR 30 (citing Ex.
6    B19F/11-12, 18-19, 27-29, 36-37, 50-52, 97-103). Among other things, the cited records include
7    results from MRIs of Plaintiff's spine showing generally unremarkable and stable results.
8    AR 2077-2083 (Ex. 19F/97-103).

9    The ALJ also found that "the extreme limitations Dr. Vu provided do not appear consistent
10   with the claimant's reported activities during the relevant period, which include cleaning out
11   closets, doing household chores, accompanying her husband to the forest for firewood, and
12   running errands with family members." *Id.* (citing Ex. B2F/62; Ex. B4F/81; Ex. B15F/16, 35; Ex.
13   B19F/20; Ex. B21F/16-17). The cited medical records contain evidence of these types of daily
14   activities. *See, e.g.,* AR 720 (Ex. B2F/62) (noting that Plaintiff's "normal activities include
15   running errands and caring for her cat and dog"); AR 1844 (Ex. B15F/16) (Plaintiff "reported that
16   she has been 'cleaning out closets' and staying busy with household chores and planning
17   upcoming trips); *see also* AR 1998 (Ex. B19F/18) (Plaintiff "and husband went to cut wood in the
18   forest for supplemental income).

19   Plaintiff suggests that it was wrong for the ALJ to rely on her self-reported activities
20   because she is a "mentally impaired claimant." *See* Dkt. 14 at 3, 8. However, Plaintiff has not
21   demonstrated that the ALJ erred in relying on such statements to evaluate Dr. Vu's opinion. An
22   ALJ may reject a treating physician's opinion if it conflicts with the claimant's own statements.
23   *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999). Similarly, a
24   conflict between a treating physician's opinion and a claimant's activity level is an acceptable
25   reason for rejecting the opinion. *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020). The ALJ's
26   decision, when read in its entirety, reflects his consideration of and reasonable conclusion,
27   supported by the record, that Plaintiff's own self-reported symptoms and activities were
28   inconsistent with the limitations found by Dr. Vu.

5

Plaintiff also argues that in evaluating Dr. Vu's opinion, the ALJ "misapplied" the regulations providing that supportability and consistency are the most important factors to consider in deciding how persuasive he found that opinion. Dkt. 14 at 5-6, 8. As discussed, however, the ALJ expressly addressed these factors. He explained that he found Dr. Vu's opinions lacked adequate support because "his own examinations of the claimant appear consistently unremarkable and imaging shows only mild or moderate degenerative changes that do not support such extreme limitations." AR 30 (citing specific medical records). The ALJ also considered consistency and found Dr. Vu's opinions to be inconsistent with Plaintiff's reported activities and the record as a whole. *Id.*

To the extent Plaintiff points to other medical evidence that might support Dr. Vu's opinion (*see* Dkt. 14 at 8), the Court notes that "the ALJ's RFC finding is not a medical finding; it is an administrative finding regarding a claimant's ability to perform basic work functions that is expressly reserved to the ALJ." *Azia B.*, 2023 WL 1442841, at *8 (citations omitted). The ALJ must consider the record as a whole, and to the extent it is conflicting, it is for the ALJ to resolve conflicts in the medical evidence. *Id.* "As long as the ALJ's interpretation is reasonable, the fact that Plaintiff would have resolved the conflict differently, or the evidence may have supported a different interpretation, does not establish legal error." *Id.* (citations omitted).

Here, the ALJ's evaluation of the record as a whole complied with the regulations and satisfied the substantial evidence standard of review. The Court also notes that the ALJ added certain limitations to the RFC to accommodate Plaintiff's neck pain, back pain, limited range of motions in her spine, and decreased sensation in her feet. AR 16, 30. These limitations at least partially address some of the postural and manipulative limitations referenced in Dr. Vu's report. *See* AR 2159-2160.

For the reasons discussed above, Plaintiff has not shown that the ALJ erred in evaluating Dr. Vu's opinion.

### 2. Telford Moore, M.D.

Plaintiff argues that the ALJ erred in finding unpersuasive the opinion of Dr. Moore, who conducted a consultative examination of Plaintiff. Dkt. 14 at 6-7. Dr. Moore found Plaintiff to be

6

significantly compromised in various job-related abilities due to her psychiatric conditions. AR 1759. The ALJ addressed both the supportability and consistency of Dr. Moore's opinion. AR 29. Specifically, the ALJ stated that "the objective findings from [Dr. Moore's] evaluation do not support his conclusions that the claimant could not tolerate full-time work or interact with others on a consistent basis." *Id.* (citing Ex. B9F/2-11). Consistent with the ALJ's analysis of supportability, Dr. Moore's report explains that he administered a number of tests, which he summarized as revealing "Low Average verbal intellectual functioning, Average working memory functioning, and Average mental status." AR 1758. Dr. Moore's report also includes his behavioral observations concerning Plaintiff, including that he found her to be "clean and adequately groomed," "very pleasant and polite," fully cooperative with good eye contact." AR 1750.

On the consistency factor, the ALJ found that "Dr. Moore's conclusions do not appear consistent with the treatment notes from various providers who noted the claimant responded well to mental health treatment and maintained a stable mental status aside from occasional symptom exacerbations." AR 29 (citing Ex. B15F/34; Ex. B18F/2-3; Ex. B19F/20; Ex. B21F/11, 13, 17, 19-20, 25-26). The cited medical records support the ALJ's conclusion on this point. *See, e.g.,* AR 2000 (Ex. B19F/20) (noting Plaintiff's good eye contact, appropriate dress, and grooming); AR 2135 (Ex. B21F/11) (finding Plaintiff to be "[f]riendly, appropriate, polite" and have "clear, logical, linear, goal oriented thought process); AR 2141 (Ex. B21F/17) ("client stable"); AR 2149 (Ex. B21F/25) ("she reports her mood is stable and for the most part it has been good. She feels she is doing well.").

The Court finds that the ALJ properly considered and discounted Dr. Moore's opinion based on substantial evidence in the record. The Court also notes that despite discounting Dr. Moore's opinion that Plaintiff was significantly compromised in various respects, the ALJ's RFC limits Plaintiff to "simple and routine tasks" and "occasional interaction with coworkers and only brief, superficial interactions with the public" in order to accommodate Plaintiff's "racing thoughts and occasional preoccupation with negative thoughts" and her "occasional irritation and tearfulness when stressed." AR 30-31. These limitations at least partially address some of the

limitations referenced in Dr. Moore's report, such as his finding that Plaintiff is "significantly compromised" in her abilities to "perform detailed and complex tasks," "interact acceptably with various coworkers and the public," and "deal effectively with the usual stresses encountered in competitive work." AR 1759.

### 3. Wendy Brandon, PMH-NP

Plaintiff's psychiatric provider, Nurse Practitioner Brandon, completed a mental impairment questionnaire in which she opined that Plaintiff would be absent from work 4 days or more per month and would be "off task" more than 30% of an average work day. AR 2155. The ALJ stated that he did not find this opinion persuasive. AR 29. Again, the ALJ addressed both supportability and consistency. AR 29-30. As the ALJ noted (AR 29), in the questionnaire, NP Brandon simply crossed out and did not answer any of the questions asking for her opinion of Plaintiff's abilities to understand, remember, and apply information; interact with others; concentrate, persist, or maintain pace; or adapt and manage herself, which preceded the later questions she answered about Plaintiff's expected absences and "off-task" behavior. AR 2154-2155. The ALJ also found that "although [NP Brandon] treated the claimant throughout the second part of the relevant period, Ms. Brandon's conclusions do not appear well supported by her own observations or treatment notes." AR 29. In support of this finding, the ALJ cited NP Brandon's treatment records showing Plaintiff's fair response to a treatment regimen. AR 30. The ALJ found these treatment records to be consistent with specific records of Plaintiff's counselors. *Id.* The ALJ went on to conclude that "Ms. Brandon's conclusion that the claimant could not perform any full-time work on a consistent basis does not appear well supported or consistent with the record." *Id.* The record supports the ALJ's decision to discount NP Brandon's opinion for lack of supportability and consistency.

### 4. Other factors

Plaintiff cites as an additional ground for challenging the ALJ's evaluation of the medical evidence the ALJ's supposed failure to consider the factors in paragraphs (c)(3) through (c)(5) of 20 C.F.R. § 404.1520c(3). Dkt. 14 at 9-12. Again, these factors are: the medical provider's relationship with the claimant (paragraph (c)(3)); the medical provider's specialization (paragraph

8

(c)(4)); and "other factors" (paragraph (c)(5)).  Plaintiff argues that the ALJ "declined to articulate how he considered these factors" and from that concludes that "he never considered them at all."  Dkt. 14 at 9-10.  However, as Plaintiff concedes, the regulations provide that the ALJ "may, but [is] not required to, explain how [he] considered" these factors.  20 C.F.R. § 20C.F.R. § 404.1520c(b)(2).  The Court is not persuaded by Plaintiff's attempt to infer from the (permissible) absence of an articulation by the ALJ of how he considered these factors that he failed to consider them at all.

### 5. Conclusion on ALJ's evaluation of the medical evidence

Accordingly, for the reasons discussed above, on the issue of the ALJ's evaluation of Plaintiff's RFC, the Court **DENIES** Plaintiff's motion and **GRANTS** the Commissioner's cross-motion.

### B. Issue Two: Listings

The Ninth Circuit has recognized that "[c]onditions contained in the Listing of Impairments are considered so severe that they are irrebuttably presumed disabling, without any specific finding as to the claimant's ability to perform his past relevant work or any other jobs." *Lester v. Chater*, 81 F.3d 821, 828 (9th Cir. 1995) (internal quotation marks omitted); 20 C.F.R. § 404.1520(d).  Accordingly, "[c]laimants are conclusively disabled if their condition either meets or equals a listed impairment."  *Id*.; 20 C.F.R. § 404.1520(d).  As the claimant, Plaintiff bears the burden of proving that her condition meets or equals a Listing.  *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

Plaintiff argues that the ALJ erred by concluding that her mental conditions did not meet the requirements of Listings 12.04, 12.06, or 12.15.  Dkt. 14 at 4.[3]  These Listings each have three paragraphs designated A, B, and C.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 at § 12.00(A)(2).  A claimant's "mental disorder must satisfy the requirements of both paragraphs A and B, or the

---

[3] The ALJ also found that Plaintiff's impairments did not meet or equal Listing 1.04 (concerning disorders of the spine) or Listing 11.14 (concerning peripheral neuropathy).  AR 14.  Plaintiff does not challenge these findings on appeal.  *See* Dkt. 14 at 4.

requirements of both paragraphs A and C." *Id.* Paragraph A of each of these Listings "includes the medical criteria that must be present in your medical evidence"; to satisfy Paragraph B, a claimant's mental disorder must result in "extreme" limitation of one, or "marked" limitation of two, of four areas of mental functioning; and to satisfy Paragraph C, the claimant's mental disorder must be "serious and persistent." *Id*. at § 12.00(A)(2)(a)-(c).

The ALJ addressed the Paragraph B and Paragraph C criteria in his decision. AR 14-16. The ALJ specifically evaluated each of the four requirements under Paragraph B and ultimately concluded that the Paragraph B criteria had not been met. *Id.* In a short paragraph following the Paragraph B analysis, the ALJ also stated:

> The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria, because the claimant did not demonstrate only marginal adjustment in describing her activities of daily living.

AR 16. The ALJ cited specific portions of the record in support of this statement. *Id.*

Plaintiff asserts that "[t]hree independent and separate medical opinions" found that she met these three Listings. *Id.* (citing AR 1759, 2152-2156, 2158-2160). She contends that "in order to find that [Plaintiff] did not meet a listing, [the ALJ] would have had to necessarily find [these opinions] unpersuasive … In other words, the ALJ would have had to reject substantial evidence to support this position." *Id.* In support of this argument, Plaintiff cites the opinions of Dr. Moore, Dr. Vu, and NP Brandon. *Id*. at 4. However, the cited material does not support Plaintiff's assertion that these medical providers found that she met the Listings. Neither Dr. Moore nor Dr. Vu explicitly opined on whether Plaintiff met any Listing. *See* AR 1746-1759 (Moore report of psychological evaluation); AR 2157-2160 (Vu medical opinion). The opinion of Dr. Vu upon which Plaintiff relies addressed physical factors and did not consider her mental condition except for a single question asking what percent of each day Plaintiff would be "off task" based on all of her physical and mental conditions, which Dr. Vu opined would be 15 percent. AR 2160. Although Dr. Moore found that Plaintiff's mental abilities were significantly compromised in some areas (*see* AR 1759), those limitations do not align directly with the Paragraph B or C criteria. In any event, as discussed above, the ALJ adequately justified his

conclusions that the opinions of Dr. Vu and Dr. Moore were not persuasive. AR 29-30.

NP Brandon crossed out and did not answer the portion of a mental impairment questionnaire concerning the Paragraph B factors, but she checked a box indicating that Plaintiff experienced symptoms in line with Paragraph C. AR 2156. Nevertheless, elsewhere in his decision the ALJ found NP Brandon's opinion unpersuasive (AR 29-30) and, as discussed in above, substantial evidence supports that conclusion. Factual support for the ALJ's conclusion on the Listings properly can be deduced from the ALJ's discussion of the medical evidence elsewhere in his decision. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1200-01 (9th Cir. 1990); *see also Dixon v. Astrue*, No. C–09–04869 JCS, 2010 WL 3766561, at *13 (N.D. Cal. Sept. 24, 2010) (finding that "the ALJ's discussion of Plaintiff's medical history is sufficient to show that he considered whether Plaintiff's impairments met or equaled a listed impairment" and "the ALJ provided a detailed review of the medical evidence in the record, which . . . [was] an adequate statement of the foundations on which the ultimate factual conclusions are based.").

Other than the three medical opinions, Plaintiff's motion for summary judgment does not cite any specific evidence in the medical record demonstrating that she met Paragraph B or C of Listings 12.04, 12.06, or 12.15. *See* Dkt. 14 at 4. After the Commissioner pointed out this deficiency in the cross-motion for summary judgment (Dkt. 17 at 4), Plaintiff's reply brief discusses at length evidence that she argues demonstrates that she meets the Paragraph A criteria of the relevant Listings. Dkt. 21 at 3-5. However, those Listings require that Plaintiff's condition satisfy not only Paragraph A criteria, but also either the Paragraph B or C criteria. 20 C.F.R. Pt. 404, Subpt. P, App. 1 at § 12.00(A)(2). By focusing on the Paragraph B and C criteria, the ALJ evidently either concluded or assumed that the Paragraph A criteria for each Listing were met. The only evidence cited by Plaintiff in support of her argument that the Paragraph B and/or C criteria are the opinions of Dr. Moore, Dr. Vu, and NP Bradford. Dkt. 14 at 4; Dkt. 21 at 5. As discussed above, that evidence is not sufficient to demonstrate that the ALJ's conclusion on the Listings was erroneous.

In discussing the Listings, the ALJ did not specifically address Listing 12.15. *See* AR14-16. However, the ALJ is not required "to state why a claimant failed to satisfy every different

section of the listing of impairments." *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990). When the ALJ's "evaluation of the evidence" adequately describes the "foundations on which the ultimate factual conclusions are based," requiring an ALJ to explain why a claimant does not meet each listing "would unduly burden the social security disability process." *Id.* The Paragraph B and C criteria are the same for Listings 12.04, 12.06, and 12.15. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1. Because the ALJ's conclusions that the criteria were not met for Listings 12.04 and 12.06 were supported by substantial evidence, the Court finds that the ALJ provided an adequate basis for rejecting Listing 12.15 as well. *See Kenneth C. v. Saul*, No. 19-cv-06627-JST, 2021 WL 4927413, at *15 (N.D. Cal. Mar. 15, 2021).

Accordingly, for the reasons discussed above, on the issue of the ALJ's evaluation of whether Plaintiff's condition met or equaled a Listing, the Court **DENIES** Plaintiff's motion and **GRANTS** the Commissioner's cross-motion.

**V.      CONCLUSION**

For the foregoing reasons, the Court **DENIES** Plaintiff's motion for summary judgment and **GRANTS** Defendant Commissioner's cross-motion for summary judgment.

**SO ORDERED.**

Dated: April 19, 2023

SUSAN VAN KEULEN
United States Magistrate Judge